UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CLEMENT D. WARR,                          )
                                          )
          Plaintiff,                      )
                                          )
     vs.                                  )     Case No. 4:12 CV 980 CDP
                                          )
CHUCK HAGEL. SECRETARY,                   )
UNITED STATES DEPARTMENT                  )
OF DEFENSE,[1]                            )
                                          )
          Defendant.                      )

## MEMORANDUM AND ORDER

Since 2001, Clement Warr has worked as a visual information specialist in

the media services branch at the National Geo-Spatial Intelligence Agency's

facility in Arnold, Missouri.  In 2009, Warr left work earlier than indicated on his

time sheet.  When his supervisor found out, she gave him a verbal warning.

However, Warr complained that he should not have been warned because some of

his coworkers attended a party during work hours without using leave time.  Warr

contends that, in response, defendant reprimanded him, gave him an unfavorable

performance review, refused to place him on second shift[2] at a new facility, and

---

[1]Chuck Hagel, as head of the National Geo-Spatial Intelligence Agency, is substituted as
the proper defendant in this Title VII action.  42 U.S.C. § 2000e-16(c).

[2]Although the amended complaint alleges that he was discriminated against because he
was placed on the second shift, the evidence and briefing make clear that Warr wanted to be on

put him on a Performance Improvement Plan. Warr, an African-American, alleges that he was subjected to race discrimination and retaliation and brings claims under 42 U.S.C. § 1981 and Title VII.[3]

NGA moves for summary judgment on all counts of the complaint. After thorough review of the entire record, I find that Warr has come forward with no evidence which could lead a reasonable jury to conclude that he was subjected to discrimination or retaliation. Because there are no genuinely disputed material facts and NGA is entitled to judgment as a matter of law, I will grant summary judgment for the reasons that follow.

## Standards Governing Summary Judgment

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of

---

the second shift and is instead alleging that the failure to place him on the second shift amounted to discrimination and retaliation.

[3]In opposition to summary judgment, Warr claims that he was subjected to a hostile work environment. There is no hostile work environment claim before me. Count II of Warr's amended complaint alleges that "defendant's actions of issuing plaintiff a reprimand, giving plaintiff an unfavorable Annual Performance Evaluation, placing plaintiff on the second shift, and putting plaintiff on a Performance Improvement Plan were adverse actions taken against plaintiff on account of his race." Warr's amended complaint contains no allegations of a hostile work environment claim, and he cannot raise them now in opposition to summary judgment. Moreover, any hostile work environment claim would likely be untimely and subject to dismissal for failure to exhaust administrative remedies. In any event, I need not consider these defenses as no hostile work environment claim is before me.

law." Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007);

see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual

disputes that may affect the outcome of the case under the applicable substantive

law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of

material fact is genuine if the evidence would allow a reasonable jury to return a

verdict for the non-moving party. Id. "The basic inquiry is whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." Diesel Machinery,

Inc. v. B.R. Lee Industries, Inc., 418 F.3d 820, 832 (8th Cir. 2005) (internal

quotation marks and citation omitted). The moving party has the initial burden of

demonstrating the absence of a genuine issue of material fact. Torgerson v. City

of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). If the

movant does so, "[t]he nonmovant must do more than simply show that there is

some metaphysical doubt as to the material facts, and must come forward with

specific facts showing that there is a genuine issue for trial." Id. (internal

quotation marks and citation omitted). "Credibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc.,

530 U.S. 133, 150 (2000) (internal quotation marks and citation omitted). Under

these standards, I review the facts in this case.

## Background Facts

From October of 2008 to September 31, 2009, Warr's first-level supervisors at NGA were Michael Reed and Michael Tiemann. In November of 2009, Vernon Grothoff became Warr's first-level supervisor. At all relevant times, Patricia Dickens was his second-level supervisor.

On June 16, 2009, Warr's shift manager Dennis DuMey reported to Tiemann that Warr left the office two hours early. However, on the attendance sheet Warr indicated that he left on time. Warr did not request permission or use leave time for his early departure. Warr told DuMey that he was entitled to leave early because he did not take a lunch or break that day. However, under the NGA's employee manual, employees are only given one 30 minute break and are not permitted to leave early if they do not take a break. Therefore, on July 8, 2009, Dickens gave Warr an oral admonishment for leaving early and told him that he was expected to work his scheduled hours. An oral admonishment or warning is the least severe form of disciplinary action, as it consists only of a discussion between a supervisor and an employee. Warnings are not made part of the employee's official personnel file, but the supervisor documents the discussion

and keeps an informal record of it for six months.[4]

During that meeting, Warr told Dickens that DuMey left the office early multiple times. He also complained about his coworkers attending a party off site during work hours on June 25, 2009. However, this party was approved by management, and all employees (including Warr) were invited to attend. Nevertheless, in response to Warr's complaints Dickens verified the accuracy of time and attendance records for all employees who attended the party. NGA policies give a supervisor discretion to set an employee's work hours. These policies also state that employees must accurately record time worked and request approval from supervisors to change work schedules.

In his performance evaluation for the period from October 1, 2008 to September 30, 2009, Warr was given an overall rating of 2.4 or "minimally successful" by Tiemann.[5] In his previous evaluation under a different scoring system, he was rated "successful." Dickens was the reviewing official for Warr's

---

[4]Although Warr has alleged that a "letter of reprimand" was placed in his file, the record of his oral admonishment is not a letter of reprimand. A letter of reprimand is actually a more severe form of discipline that is part of an employee's official personnel file.

[5]Warr was rated minimally successful in one performance objective (digital transformation branch and team support) and five performance elements (accountability for results, communication, engagement and collaboration, personal leadership and integrity, and technical expertise). In the remaining two performance objectives and one performance element, Tiemann rated Warr as successful.

performance evaluation and met with him on November 10, 2009 to discuss his evaluation.  She also followed up the next day with a written memorandum.  (Doc. #36-2 at 34-35).  In the memorandum, Dickens explained that Warr's time and attendance issues factored into only two of the areas in which he was rated as minimally successful -- that of personal leadership/integrity and DT branch/team support.  It was also noted that Warr provided only minimal instruction to others, did not attend mandatory meetings, failed to meet deadlines, failed to communicate with his supervisor, did not network with his coworkers, nodded off in meetings, and made no attempt to gain subject matter expertise.

In January of 2010, NGA announced that the second shift in Warr's team was being eliminated for financial reasons.[6]  At that time, Warr had been voluntarily working the second shift.  All employees on the second shift, including Warr, were scheduled to move to the first shift.[6]  Because they were no longer working the night shift, these employees were no longer entitled to receive night differential premium pay, which was equivalent to 10 percent of the employee's basic rate of pay.

_____

[6]NGA no longer needed a second shift because it had finally acquired enough workstations for all employees to work the first shift.

[6]Eight employees were moved to first shift.  Two (including Warr) were African-American, and the rest were Caucasian.  First shift employees start their work day between 6:00 a.m. and 9:00 a.m. and end their work day by 6:00 p.m.

Around the same time, NGA announced that the St. Louis Information Library (STIL) was moving to the Arnold facility where Warr worked. This initially required staffing first, second, and third shifts. According to the memorandum announcing the move, "[m]ission requirements, skill level and successful performance (or better) will all be taken in to consideration for staffing the STIL. Seniority is not a factor . . . ." (Doc. #36-3 at 7). Warr told Grothoff he was interested in working a second shift position at STIL, but Warr was not eligible for the position because he did not have a "fully satisfactory" performance rating. Warr was not assigned to work second shift at STIL and instead moved to first shift.

When Grothoff became Warr's first-level supervisor, he noticed that Warr's performance had declined to an unacceptable level since his review. Therefore, on February 16, 2010, Grothoff issued a 90-day performance improvement plan (PIP) for Warr.[7] (Doc. # 36-2 at 36-40). The PIP outlines Warr's deficient performance and provides detailed actions for improvement. Warr was warned that if his performance did not improve to at least the minimally successful level within 90 days and stay at that level for one year, then further action, including possible

---

[7]NGA guidelines require supervisors to issue a PIP whenever an employee is performing at an unacceptable level.

termination, would be considered. (Id. at 36). Because Grothoff determined that Warr's performance improved after receiving the PIP, no further action was taken. Warr remains employed at NGA.

Warr contacted his EEO official on November 3, 2009, claiming that Dickens "put a letter in his personnel file" for a time and attendance violation and then used it to lower his performance evaluation. Warr alleged that he performed at the same level as white employees in his branch but received a lower rating. Warr made a claim of retaliation for prior EEO activity on January 13, 2010, after he was not moved to the second shift STIL position. He also claimed race discrimination and retaliation when he was moved to first shift and placed on a PIP. Warr filed this complaint on May 30, 2012, alleging race discrimination and retaliation.

## Discussion

Warr's § 1981 claim will be dismissed because Title VII is the exclusive judicial remedy for claims of racial discrimination in federal employment. Brown v. General Services Administration, 425 U.S. 820, 835 (1976); Mathis v. Henderson, 243 F.3d 446, 449 (8th Cir. 2001).

Here, Warr complains that he was subjected to racial discrimination and retaliation because he was reprimanded for leaving work early while white

coworkers who left early were not reprimanded, he received an unfavorable

employment evaluation because he complained about coworkers attending a party

during work hours, he was placed on the first shift and not given the second shift

at STIL, and he was placed on a PIP. Title VII prohibits discrimination against an

employee because of race. See 42 U.S.C. § 2000e-2(a)(1). Because Warr has no

direct evidence of racial discrimination, I must analyze his claims under the

familiar burden-shifting framework set out in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973), and later refined in Texas Department of Community Affairs

v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S.

502 (1993).

Under this framework, Warr must first establish a prima facie case of

discrimination by adducing proof that: (1) he is a member of a protected class; (2)

he was meeting his employer's legitimate expectations; (3) he suffered an adverse

employment action; and (4) he was treated differently than similarly situated

employees who were not members of his protected class. Jackman v. Fifth

Judicial Dist. Dept. of Correctional Servs., 728 F.3d 800, 804 (8th Cir. 2013). "An

adverse employment action is defined as a tangible change in working conditions

that produces a material employment disadvantage, including but not limited to,

termination, cuts in pay or benefits, and changes that affect an employee's future

career prospects . . . ." Id. "However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." Id. "The test for whether employees are similarly situated is rigorous and requires that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing herself to the other employees." Wright v. St. Vincent Health System, 730 F.3d 732, 740 n.7 (8th Cir. 2013) (internal quotation marks and citations omitted). "The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without any mitigating or distinguishing circumstances." Id. (internal quotation marks and citation omitted).

The prima facie case creates a rebuttable presumption of discrimination. Burdine, 450 U.S. at 254. Once the plaintiff creates this rebuttable presumption, the defendant must advance a legitimate, non-discriminatory reason for the employment action. St. Mary's Honor Center, 509 U.S. at 506-08. The defendant's burden is one of production, not proof. Burdine, 450 U.S. at 254-55; Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995). The defendant need not persuade the court; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center, 509

U.S. at 509.

If the defendant carries this burden, then the burden shifts back to the
plaintiff to show that the employer's proffered reason is merely a pretext for
discrimination. <u>Burdine</u>, 450 U.S. at 253. The plaintiff may either prove pretext
directly, by showing that the defendant was more likely motivated by a
discriminatory reason, or indirectly, by showing that the defendant's explanation is
unworthy of credence. <u>Rose-Maston v. NME Hospitals, Inc.</u>, 133 F.3d 1104, 1108
(8th Cir. 1998). The plaintiff at all times bears the ultimate burden of establishing
the existence of facts which, if proven at trial, would permit a jury to conclude that
intentional discrimination was the true reason for the defendant's action. <u>Id.</u> at
508. "The ultimate question in every employment discrimination case involving a
claim of disparate treatment is whether the plaintiff was the victim of intentional
discrimination." <u>Reeves</u>, 530 U.S. at 153.

Title VII also prohibits employers from retaliating against employees for
opposing racial discrimination. <u>See</u> 42 U.S.C. § 2000e-3(a). To establish a prima
facie case of retaliation, Warr must demonstrate that he engaged in statutorily
protected activity, he suffered an adverse employment action, and a causal
connection exists between the two. <u>Gilbert v. Des Moines Area Community
College</u>, 495 F.3d 906, 917 (8th Cir. 2007). To establish causation, Warr must

prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." University of Texas Southern Medical Center v. Nassar, 133 S. Ct. 2517, 2533 (2013). "In the retaliation context, a materially adverse employment action is one that might have persuaded a reasonable worker from making or supporting a charge of discrimination." Jackman, 728 F.3d at 804-05 (internal quotation marks and citation omitted).

Warr cannot establish his prima facie case for racial discrimination or retaliation with respect to his oral admonishment for time and attendance issues, his "minimally successful" performance rating, and his placement on a PIP because these are not materially adverse actions as a matter of law. "'A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status—a reduction in title, salary or benefits.'" Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (quoting Wenzel v. Missouri–American Water Co., 404 F.3d 1038, 1042 (8th Cir. 2005)). "Although actions short of termination may constitute adverse employment actions . . . 'not everything that makes an employee unhappy is an actionable adverse action.'" Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006) (quoting Montandon v. Farmland Indus., Inc., 116 F.3d 355, 59 (8th Cir. 1997)). "[C]hanges in duties or working conditions that cause no materially

significant disadvantage" do not establish a prima facie case.  Id. (internal

quotations omitted) (finding that schedule changes were not adverse employment

actions).  Thus, "a transfer involving only minor changes in working conditions

and no reduction in pay or benefits will not constitute an adverse employment

action," Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997), nor will

transferring an employee to a different office within commuting distance, Jones,

336 F.3d at 692, or refusing to transfer an employee, LePique v. Hove, 217 F.3d

1012, 1013–14 (8th Cir. 2000), or transferring an employee to a different shift

without any accompanying significant change in working conditions, Shockency

v. Ramsey County, 493 F.3d 941, 948 (8th Cir. 2007).  "[O]therwise every trivial

personnel action that an irritable . . . employee did not like would form the basis of

a discrimination suit." Ledergerber, 122 F.3d at 1144 (internal quotations

omitted).  "Minor changes in duties or working conditions, even unpalatable or

unwelcome ones, which cause no materially significant disadvantage, do not

satisfy the [adverse employment action] prong." Higgins v. Gonzales, 481 F.3d

578, 584 (8th Cir. 2007).  If, however, "the transfer results in a significant change

in working conditions or a diminution in the transferred employee's title, salary, or

benefits" there may be an adverse employment action.  Fisher v. Pharmacia &

Upjohn, 225 F.3d 915, 920 (8th Cir. 2000).

Here, Warr received an oral admonishment, the least severe form of discipline, for admittedly leaving work early without permission and falsely indicating his departure time. This admonishment -- which did not result in a reduction of salary, title, or benefits, and was not even made a permanent part of his personnel file -- is, at most, a trivial personnel action and cannot form the basis of a discrimination suit. See Ledergerber, 122 F.3d at 1144. The same is true of Warr's "minimally successful" performance rating and his placement on a PIP. For the period from October 1, 2008 to September 30, 2009, Warr was rated as "minimally successful" in one performance objective and five performance elements, but was rated as "successful" in the remaining objectives and elements. Subsequently, Warr was placed on a PIP when Grothoff observed that Warr's performance had deteriorated from "minimally successful" to "unacceptable" in the months after his performance evaluation. In each case, Warr was given specific examples of his performance problems and detailed actions for improvement. "An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms and conditions of the recipient's employment." Clegg v. Arkansas Dept. of Correction, 496 F.3d 922, 927 (8th Cir. 2007). Here, however, Warr received no reduction in pay, grade, or benefits as a result of this performance evaluation and

PIP.[8]  In fact, no further action was taken against Warr because his supervisors

concluded that his performance improved after he was issued the PIP.  Under these

circumstances, then, these actions do not amount to adverse employment actions.

As such, Warr's discrimination and retaliation claims based on these actions fail as

a matter of law.  See Jackman, 728 F.3d at 804-05.

Even if I assume for purposes of this motion that these were adverse

employment actions and that Warr had otherwise established a prima facie case

with respect to them and the decision to place Warr on first shift and not on

STIL's second shift,[9] Warr's discrimination and retaliation claims would still fail.

If I assume that Warr has met his initial burden, the burden then shifts to the NGA

to articulate legitimate, non-discriminatory reasons for its oral admonishment of

Warr, Warr's "minimally successful" performance evaluation, his PIP, Warr's

placement on first shift, and his non-placement on STIL's second shift.  NGA

easily meets this burden.  NGA states that Warr was orally admonished because he

_____

[8]To the extent Warr's argument that he was not reassigned to the STIL second shift
because of his "minimally successful" performance rating can be liberally construed as an
argument that this amounted to an adverse employment action, it will be addressed below.

[9]This is a generous assumption because Warr has provided no evidence that similarly
situated employees outside his protected class were treated more favorably.  In contrast, NGA has
come forward with numerous examples of comparable (or in some cases, more severe)
disciplinary action taken against similarly-situated Caucasian employees for similar time,
attendance, and performance issues.  Warr does not refute NGA's evidence with respect to any of
these employees.

left work early without permission and did not accurately record his departure time -- facts admitted by Warr. NGA further contends that Warr was rated "minimally successful" not only because of these time and attendance issues, but because he provided only minimal instruction to others, did not attend mandatory meetings, failed to meet deadlines, failed to communicate with his supervisor, did not network with his coworkers, nodded off in meetings, and made no attempt to gain subject matter expertise. NGA maintains that Warr was placed on a PIP because his job performance declined from "minimally successful" to "unacceptable" in the months following his evaluation. As for Warr's move to first shift, NGA eliminated the second shift and moved all second shift employees, including Warr, to first shift. Finally, Warr was not eligible for the STIL's second shift position because he did not have a "fully satisfactory" performance rating. These are legitimate non-discriminatory reasons for taking the challenged employment actions.

Because NGA has met its burden to produce legitimate, non-discriminatory reasons for its actions, the burden then shifts back to Warr to "'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Reeves., 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253). Warr can withstand summary

judgment if the evidence in its entirety: (1) creates a fact issue as to whether NGA's proffered reasons are pretextual; and (2) creates a reasonable inference that race was a determinative factor or that retaliation was a but-for factor in the adverse employment decision. Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996) (race); Jackman, 728 F.3d at 804 (retaliation). Viewing the facts and inferences from the facts in the light most favorable to Warr, I find no evidence that creates a reasonable inference that race was a determinative factor or that retaliation was a but-for factor in these employment decisions, nor do I find any evidence that could support an inference of pretext.

As a general matter, Warr has offered nothing, other than self-serving allegations, to contest the validity or veracity of the NGA's stated reasons for the challenged employment actions. Warr offers no evidence in opposition to summary judgment and cites to purported testimony from the administrative hearing of his charge without even providing the Court with a copy of the transcript. Yet even this "testimony" is irrelevant because it allegedly consists of the opinions of two non-supervisory employees. Whether two of Warr's coworkers may have thought he was doing a good job is irrelevant to the issue of whether his supervisors believed Warr met the legitimate expectations of his job, and a coworker's personal, unsupported belief that Warr was discriminated against

is nothing more than hearsay and cannot be considered evidence of pretext or a discriminatory or retaliatory motive.

As for Warr's allegation that he was reprimanded unfairly and retaliated against because he reported that some of his coworkers attended a party while on duty, the undisputed evidence demonstrates that this was an approved outing and that all employees (including Warr) were invited to attend. Nevertheless, in response to Warr's complaints Dickens verified the accuracy of time and attendance records for all employees who attended the party. Warr may personally believe that it is unfair for NGA to approve an offsite party or that he is entitled to take off early when he works through his break, but he cannot determine for himself was NGA policies should be. This is a decision left to NGA, and NGA policies give a supervisor discretion to set an employee's work hours, which includes approving off-site activities. These policies also require employees to accurately record time worked and request approval from supervisors to change work schedules. NGA is free to set its own time and attendance policies, and neither this Court nor Warr can decide what they should be. "The employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." Hutson v. McDonnel Douglas Corp., 63 F.3d

771, 781 (8th Cir. 1995). As Warr has come forward with no evidence suggesting that this decision – however ill-advised he may personally believe it to be – was discriminatory or retaliatory, he cannot demonstrate that NGA's proffered reasons are pretextual.

The same is true of Warr's placement on first shift and his ineligibility for second shift. Warr cannot claim that his placement on first shift was motivated by race or retaliation because the undisputed evidence demonstrates that NGA eliminated second shift for financial reasons. Eight employees were moved to first shift. Two (including Warr) were African-American, and the rest were Caucasian. There is simply no evidence suggesting that the true motive behind NGA's decision to eliminate second shift was to discriminate or retaliate against Warr. As for Warr's ineligibility for STIL's second shift, there is simply no evidence suggesting that the criteria – which included a "fully satisfactory" performance rating – were a mere pretext to discriminate or retaliate against Warr. The undisputed evidence demonstrates that the stated reason for not placing Warr on second shift was true -- at the time of the STIL's second shift opening, Warr's performance rating was only "minimally successful" and, as such, he was ineligible for the position. There is no evidence in the record suggesting that the eligibility criteria for the STIL's second shift position were not uniformly applied

to all employees, or that any employee outside Warr's protected class with a "minimally successful" performance rating was moved to second shift. Once again, NGA is free to establish whatever criteria it chooses for its second shift position, and neither this Court nor Warr can second-guess what those criteria should be.

In summary, there is no evidence from which a person could infer that intentional discrimination or retaliation were the true motives behind NGA's actions. Warr cannot withstand summary judgment by merely hoping, without presenting some evidence of pretext, that the jury might not believe NGA's unchallenged legitimate, nondiscriminatory reasons. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996). NGA is free to make any decisions it chooses regarding its personnel, so long as it does not impermissibly discriminate. See, e.g., McLaughlin, 50 F.3d at 511-12. Under Title VII, cases must be decided on evidence of racial discrimination and retaliation, not on the basis of fairness. Torlowei v. Target, 401 F.3d 933, 935 (8th Cir. 2005). NGA's personnel decisions with respect to Warr are not illegal as long as they were not based on any ulterior, racially discriminatory or retaliatory motives. There is no evidence of such motives here. Viewing all of the evidence together, Warr has presented no evidence from which, if believed, a reasonable jury could find that Warr was

subjected to racial discrimination or retaliation. NGA is therefore entitled to summary judgment on all of Warr's claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#35] is granted, and plaintiff's claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for oral argument [#46] is denied as moot.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 18th day of April, 2014.